### Lartz Estate

312

*Brockway & Brockway*, for appellant.

*Bernard Goldstone*, for Commonwealth.

RODGERS, P. J., May 3, 1959.—Claude B. Lartz died December 9, 1956, and his will was filed for probate. The First National Bank in Sharon was appointed executor. On March 12, 1957, statement of assets, inventory, RCI form and debts and deductions were filed. The debts and deductions listed seven notes owing to Robert E. Lartz by the deceased as follows: 5/15/51, $3,600; 6/2/51, $3,200; 4/15/52, $3,600; 4/15/53, $3,600; 4/15/54, $3,600; 4/15/55, $3,600, and 4/15/56, $3,600; total of $24,800.

On March 8, 1957, the executor paid $18,000 on account of the expected inheritance tax due, prior to the filing of the inventory, statement of assets, RCI form and the debts and deductions.

On *August 5, 1957*, the executor filed its first and final account in the estate with the register of wills. No appraisal of the assets had been made by the appraiser for the Department of Revenue and the register of wills had not formally acted on the debts and deductions as filed, and no assessment had been made of the tax due. The affidavit of the executor on the account was that notice of filing of the account was given to all persons required by law without listing the persons. No personal notice was given to the register of wills.

The first and final account listed the $18,000 inheritance tax payment and the $24,800 payment to Robert E. Lartz of the notes in question.

On *September 5, 1957,* the register of wills sent a letter to attorney Brockway, attorney for the estate, as follows:

"Confirming our telephone conversation with you and Mr. Starr relative to disallowance of certain claims set forth in the Debts and Deductions filed in our office, be advised that the following claims were disallowed by the Department of Revenue: . . ."

The letter then listed the seven demand notes with the dates and the amounts payable to Robert E. Lartz.

On *September 9, 1957,* the account was confirmed nisi by the court.

On September 12, 1957, before final confirmation of the account, Mr. Brockway wrote to the register of wills as follows:

"I have your letter of September 5th advising that certain claims were disallowed by the Department of Revenue. We have checked your records and do not find any formal appraisal for inheritance tax purposes as being filed and no formal disallowances of claims having been filed.

"Phil, in talking with Mr. White, learned that the appraisal has not come back from Harrisburg and that there is some delay because of the type of Will relative to the charitable bequests.

"We do not want to get your office into the same position on this Estate as the office is on the Hugh Jones Estate. We cannot file an appeal until there has been a formal appraisal filed together with these disallowances. When that has been done, I ask that you notify me promptly with a copy of the letter to the First National Bank of Sharon as Executor.

"As of this date, there is no record of any kind concerning this appraisal or disallowances.

   Yours very truly,
    BROCKWAY AND BROCKWAY
    C. E. Brockway."

On *September 20, 1957*, the account was confirmed absolutely by the court. On April 28, 1958, the appraiser filed his appraisal of the real estate and the personalty in the sum of $196,298.14 and form ITA-1 was sent by the register of wills listing the gross value of the estate on April 29, 1958.

On *May 15, 1958*, form ITA-3 was sent by the register, "Inheritance Tax Due" listing the gross estate value to be $196,298.14 and approving debts and deductions of only *$38,763.22* instead of the sum of *$63,-563.22* as listed by the executor, a difference of $24,800, which sum was the seven notes of decedent to Robert E. Lartz. The clear value of the estate was listed at $157,534.92, and the total tax due was listed as $16,-382.60.

On *May 26, 1958*, a petition was presented to the court by the executor for a rule to show cause why the indebtedness due Robert E. Lartz should not be deducted from the gross estate and the tax figured on the balance. A rule was issued by the court and an answer was filed by the register of wills averring that as a matter of law the petition as filed was legally insufficient as an appeal to the appraisal. In addition, the answer averred that said notes were not bona fide deductions and that the tax assessment was proper as determined by the register of wills.

Argument was held on the petition and final briefs were received by the court on April 8, 1959.

In his petition, the executor did not allude to or place any reliance on the confirmation of the first and final account nor did the petition comply with the requirement of giving security for the payment of the costs set out in the formal appeal procedure in the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended by the Act of May 27, 1943, P. L. 757, 72 PS §2327. See Bolls Estate, 50 York 50; Shoughnessy Estate, 26 Erie 342.

Hearing was held on December 17, 1958, at which time the executor offered in evidence the papers of record and rested, relying on the Transfer Inheritance Tax Act of 1919, as amended by the Act of 1943, 72 PS §2302, which provides in part:

"That whenever the allowance of any deduction by the register of wills from the gross value of such estates shall be in dispute, the question of allowance shall be determined by the court having jurisdiction of the accounts of the personal representative of the decedent in the adjudication made by such court upon any such account, and unless either party shall, by exceptions to the account or to the adjudication thereon duly presented as provided by law, raise its objection to the allowance or disallowance of a deduction for any credit claimed in the account or any award made in the adjudication, as the case may be, the adjudication confirming the account or making the award shall conclusively establish that the deduction should be allowed or disallowed, as the case may be."

Prior to the passage of this act, it was clear that the question of its allowance of the deductions was to be decided in an appeal from the appraisement under 72 PS §2327. In Haids Estate, 347 Pa. 159, the Supreme Court said:

". . . the appraiser . . . appraised the clear value of the estate by appraising the assets and deducting allowable debts. . . . If he had been in doubt as to any deduction, he could have suspended such item in whole or part, for determination by the Orphans' Court. *If either the Commonwealth or the parties were dissatisfied with the appraisement they could have appealed to the Orphans' Court. . . .*" (Italics supplied.)

The passage of the Act of 1943 may have left some doubt as to the precise procedure in such cases. However, in Mills Estate, 367 Pa. 504, decided under the Act of 1943, the Supreme Court said, at page 509:

"We note that the appeal is from a definitive decree of distribution, following an audit of an account in the Orphans' Court. In essence, however, it is an appeal from an assessment of a transfer inheritance tax by the Register of Wills. *While the proper practice has not been followed . . . to prevent circuity of action, we will dispose of the tax question as if on a tax appeal.*" (Italics supplied.)

Our specific question is whether the absolute confirmation of a "first and final account" filed prior to the final appraisement by the Department of Revenue forecloses the Commonwealth from disallowing deductions which were taken by the executor in the account filed.

We believe that the Mills Estate answers this query in the negative and in any case, we believe that it should be answered in the negative under the facts of the instant case.

The Act of 1943, 72 PS §2302, which states that an adjudication "confirming the account . . . shall conclusively establish that the deductions should be allowed or disallowed" is operative only when "the allowance of any deductions by the register of wills . . . *shall be in dispute.*" (Italics supplied.)

This certainly comprehends that the question of the propriety of the deduction should have been raised, considered and determined by the court. That is, for the confirmation to be conclusive on the point there must have been a "dispute" before the court. Here the question was not raised for the court's consideration. In fact, counsel for the executor, by his letter of September 12, 1957, prior to the final confirmation of the account, pointedly and specifically selected his remedy. That is, an appeal from the appraisal. He reaffirmed, in effect, this position by the instant petition which places no reliance on the confirmation.

Since the executor has filed no security for costs as required by the appeal procedure (72 PS §2327; Rule 5, sec. 6, Mercer County Orphans' Court Rules), and at the hearing on the present petition, the estate introduced no evidence to prove that the motions in question were founded upon a bona fide contract or given for adequate consideration as required by 72 PS §2301, the court could properly dismiss the petition. We feel, however, that this action might unduly burden the beneficiaries of this estate because of a procedural error of counsel, and we will treat the procedure as an appeal and allow the executor an additional hearing at which time he may present the evidence required by 72 PS §2301.

### Order

And now, May 3, 1959, the petitioner is directed to file security for costs in accordance with 72 PS §2327, in the amount of $100 and upon compliance with this direction, will be granted a further hearing on the merits of the petition in compliance with the attached opinion.